UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| APPALACHIAN POWER COMPANY, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 7:09-cv-360 |
| v. ) | |
| ) | |
| J. STEPHEN ARTHUR and ) | By: Hon. Michael F. Urbanski |
| DONNA S. ARTHUR, ) | United States District Judge |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiff's motion for summary judgment. Dkt. No. 15. The defendants, proceeding pro se, were notified of their opportunity to file a written response, Dkt. No. 17, but did not do so. Defendant J. Stephen Arthur appeared on behalf of both defendants at a hearing on the summary judgment motion, however, and he offered some argument in response to the summary judgment motion.[1] Subsequent to the hearing, the parties engaged in efforts to reach a mutually-acceptable resolution of the suit. Dkt. No. 25. The parties have now advised that those efforts have been unsuccessful and plaintiff requests a ruling on its summary judgment motion. Id. Thus, the motion is ripe for disposition.

In its complaint, Appalachian Power Company ("APCO") seeks a declaration that the defendants, who are property owners of shoreline property on Smith Mountain Lake, expanded certain pre-existing boat docks, constructed new structures on their property, and added fill to portions of their property that resulted in elevation changes, and that each of these actions violated APCO's rights. As described in detail below, APCO holds an easement related to defendants' property allowing it to remove buildings, structures, and improvements below an established

---

[1] That hearing was held before Senior United States District Judge Turk, but the undersigned has obtained and reviewed a draft transcript of that hearing.

contour. It also holds a license from the Federal Energy Regulatory Commission ("FERC") requiring it to maintain standards of shoreline development on certain property, including defendants' property. APCO alleges that the defendants' improvements and changes to their property, all of which were undertaken without prior authority or the required permits from APCO, violate the provisions of the license issued by FERC. APCO seeks an order requiring defendants to remove or modify the structures and to remove any fill added by them below a certain contour.

For the reasons explained below, the Court **GRANTS** the summary judgment motion and will grant the relief sought by APCO.

# I.

## A.

Defendants J. Stephen Arthur and Donna S. Arthur own shoreline property on Smith Mountain Lake, in Franklin County, Virginia. They have previously operated a business known as Bridgeside Marine on the property and at the time the summary judgment motion was filed, operated a business identified as Hales Ford Boat Rentals. Dkt. No. 16, Ex. A, Decl. of Frank M. Simms, ¶ 12 ("Simms Decl.").

Plaintiff has provided detailed sworn testimony setting forth title information concerning defendants' property. See Simms Decl., ¶¶ 13-14. That information shows that defendants' property is subject to a Flowage Right and Easement Deed dated May 12, 1960. Id., ¶ 14; Dkt. No. 16, Ex. B (copy of Flowage Right and Easement Deed). Pursuant to that deed, APCO has the "right to overflow and/or affect so much of the premises as be overflowed and/or affected . . . as a result of the construction, existence, operation and/or maintenance of . . . the dam and power station, [and] the impounding of the waters . . . ." Dkt. No. 16, Ex. B at 1. That deed also grants to APCO

> . . . the further right to enter upon said premises at any time and from time to time and, at [APCO]'s discretion, to cut, burn and/or remove therefrom any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind

>or description which are or may hereafter be located on the portion
>of said premises below the contour the elevation of which is 800 feet.

ECF No. 16, Ex. B at 2. The deed retained to the grantors, i.e., defendants' predecessor-in-interest, "the right to possess and use said premises in any manner not inconsistent with the estate, rights, and privileges herein granted to [APCO]." Id. Significantly, the deed conveying the 2.042-acre parcel to defendants includes a reference to the fact that 0.6 acres of the conveyed property is located below the 800 feet above mean sea level ("fmsl") contour elevation. The 800 fmsl elevation was shown on a survey previously recorded with the Clerk of Court of Franklin County, Virginia. Simms Decl., ¶ 13.

APCO operates the Smith Mountain Hydroelectric Project ("the Project") under a license issued to it by the Federal Power Commission, now known as FERC.[2] Simms Decl., ¶ 3. FERC initially issued a fifty-year license to APCO in 1960, and in 2009, it issued a new thirty-year license, effective April 1, 2010. See Order Issuing New License, 129 FERC ¶ 62,201 (Dec. 15, 2009). The Smith Mountain Lake portion of the Project contains a reservoir with a normal maximum elevation of 795 fmsl, and the Project's boundary generally follows the contour elevation 800 fmsl. Id.; Simms Decl., ¶ 4.

Within that Project boundary, FERC has the authority over the Project and may approve or reject development plans for boat docks constructed on project lands and waters. See, e.g., Coalition for Fair & Equitable Regulation of Docks v. FERC, 297 F.3d 771, 778 (8th Cir. 2002), cert denied, 538 U.S. 960 (2003) (discussing the authority of FERC within project boundaries). On July 5, 2005, FERC issued an order amending APCO's license to incorporate a Shoreline Management Plan

---

[2] FERC was created as part of the Federal Power Act ("FPA"), 16 U.S.C. § 791a et seq., and is vested with "wide latitude and discretion in the performance of its licensing and regulatory functions." Metro. Edison Co. v. Fed. Power Comm'n, 169 F.2d 719, 723 (3d Cir. 1948). Regarding each licensed project, including those hydropower projects involving reservoirs like the one at issue here, FERC has both the "authority" and "obligation to ensure that any [reservoir uses] will be consistent with the beneficial public purposes for which a license was issued." Union Elec. Co. d/b/a/ AmerenUE, 90 FERC ¶ 61,249, at 61,833 (Mar. 16, 2000).

("SMP"), which is designed to manage shoreline development within the Project boundary.[3] The SMP gives APCO authority to grant permission—without prior FERC approval—for construction along the shoreline of piers, landings, boat docks, or similar structures and facilities "as determined under the Commission approved Shoreline Management Plan." Simms Decl., ¶ 7; see also Va. Timberline, LLC v. Appalachian Power Co., 343 F. App'x 915, 917 (4th Cir. Aug. 31, 2009) (unpublished) (addressing a similar property dispute at the Leesville Lake portion of the Project and noting APCO's authority to regulate the construction of residential boat docks without first obtaining FERC approval). APCO's new thirty-year license also incorporated this SMP. Simms Decl., ¶¶ 7-10. Thus, at all times relevant to this lawsuit, the SMP has set the parameters for what defendants may do on or to their property from the 800 fmsl line and below. Under the SMP, defendants' property is classified as "high density commercial," see SMP at 9-10, and is governed by the regulations applicable to that shoreline classification. See, e.g., id. at 13-16.

As relevant here, existing structures that pre-dated the SMP and did not conform to the SMP could remain, but the portions of the structures that were nonconforming could not be expanded unless they complied with the SMP. Simms Decl., ¶ 8. In order for any pre-existing nonconforming structures under the SMP to be permitted to remain, however, property owners had to submit to APCO documentation of any such structures by August 31, 2005. See 112 FERC ¶ 61,026 (July 5, 2005) (adopting as amended, the Shoreline Management Plan submitted by APCO). Defendants here submitted documentation showing the nonconforming structures on their property

---

[3] No party has submitted a copy of the SMP itself and it is not contained in its entirety in the FERC Order adopting it. Nonetheless, the court has reviewed the version of the SMP adopted in 2005, which was previously available at http://www.smithmtn.com/ShorelineMgmt/Plan/pdf/Final/FinalSMP.pdf (last visited in July 2013). A revised SMP was adopted in January 2014 and is currently available at http://www.smithmtn.com/ShorelineMgmt/Plan/UpdatedSMP03_05_14.pdf. Because the summary judgment motion here is based on the prior version and because the defendants' actions occurred while the prior plan was in place, the court bases its rulings herein on the earlier version. Unless otherwise noted, all citations in this opinion are to the SMP adopted in 2005.

as two floating docks, both located parallel to the shoreline, on either side of the smaller stationary docks bordering the boat ramp. Simms Decl., ¶ 6; Dkt. 16, Ex. C (submission by defendants).

**B.**

In their summary judgment motion, APCO claims that defendants have violated APCO's property rights through two types of actions. The first involves the alleged use of fill by defendants to change the 800 fmsl contour. The second involves the placement of various structures on the property in 2006 or later that violate the SMP and that were built without obtaining authority from APCO.

First, as to the fill, APCO has provided sworn testimony that on or about 2001, defendants began construction of a building within the Project boundary and, as part of that construction, placed fill below the original 800 fmsl contour elevation in a manner that relocated the 800 fmsl contour elevation. Simms Decl., ¶ 15. After APCO discovered this construction, it requested that defendants cease construction and restore the Project boundary to its original condition. Id. APCO alleges that defendant ceased construction but failed to completely restore the Project boundary. Id. Mr. Simms also avers that defendants "have made further alterations to the 800 foot contour elevation by cutting and filling within the original Project boundary." Id., ¶ 23.

Defendants admitted at the hearing that they filled in a certain area of the property in order to build a storage building, but contend that when APCO stopped them from building, they tore the building down and took the dirt away, restoring the shoreline to where it was when they started the project. They further contend that the 800 fmsl line has changed over time not as a result of intentional filling by them, but as a result of runoff and debris from heavy rains. Despite their argument on this point, defendants have not offered any sworn testimony or other admissible evidence to show that the 800 fmsl line on the recorded survey was not in their chain of title. It is therefore undisputed that the 800 fmsl line from that survey is the pertinent 800 fmsl line for

purposes of the property rights of the parties here. See Dkt. 16, Ex. G (showing original 800 fmsl contour in solid black line). Notably, moreover, the SMP prohibits filling within the Project boundary "with the exception of only the minimal amounts of fill necessary for the proper design and installation of an erosion control structure." SMP at 43.

Second, APCO asserts that its property rights were violated when defendants added docks and other structures to the property after the SMP was adopted. In May 2006, defendants applied to APCO for a permit to expand the docks on their property by adding boat docks for rental boat storage and other purposes. Dkt. 16, Ex. D. In response to this permit application, APCO requested additional information to evaluate SMP compliance from the defendants. Simms Decl., ¶¶ 18-19. Instead of providing the additional information (which they have never done), defendants began construction without a permit, id., ¶ 20. Moreover, despite repeated requests from APCO to remove the nonconforming structures, defendants have refused to do so.

APCO's summary judgment motion, which includes a survey by Mattern & Craig dated May 21, 2010, see Dkt. 16, Ex. G, points to five structures on defendants' property that violate the SMP and that defendants did not obtain a permit from APCO to build: (1) an "L"-shaped floating dock with a T-shaped end attached to one of its two pre-existing docks; (2) a storage building on skids built below the 800-foot contour; (3) a wooden deck-style walkway around the storage building; (4) a wooden sidewalk parallel to the shore that connects to another walkway and to gas tanks, but not to a dock; and (5) a second floating dock that attaches to a previously-existing dock that extends beyond the footprint of the prior dock. Defendants conceded at the hearing before Judge Turk that they did not obtain a permit to build any of these structures. They also stated that they had obtained a new application form for some of the structures since the initiation of this lawsuit, but again, explained that they had not actually submitted the application for a permit as of the date of the hearing.

According to the affidavit submitted by APCO and the 2010 Mattern & Craig survey, the first non-conforming structure defendants added was a 49.9-foot long floating dock with a "T" shaped end on the east side of the boat ramp. That dock extends longer than one-third the length of the cove, and thus violates the portion of the SMP that reads:

> 6. The docks shall not exceed a maximum of 1/3 cove width or 120 feet in length, whichever is less, as measured from the base elevation (Figure 1). However, an exception is allowed when the cove is 510 feet or wider; then the length of the dock plus a 50 foot no-wake zone cannot exceed 1/3 cove width with a maximum dock length of 166 feet.

SMP at 14; see also Simms Decl., ¶ 21.

At the hearing, defendants argued about whether or not the new dock actually extends more than 1/3 of the way into the cove, as alleged by APCO. Notably, however, they did not present any affidavits or surveys to support their assertion and the undisputed evidence before the court shows that it does. See Dkt. 16, Ex. G (survey Performed on May 21, 2010 reflecting docks in cove). As noted, it is likewise undisputed that defendants never obtained approval to build that new dock, as required by the SMP.

The second non-conforming structure is the storage building. Like the dock, a portion of the storage building was built below the 800 fmsl contour of the Project, and no permit was obtained to build it. Thus, it is in violation of the SMP. At the summary judgment hearing, APCO emphasized that it is not attempting to require the removal of that building. Rather, it only wants the building—which is on skids—to be moved back from the shoreline so that it is not below the 800 fmsl contour boundary line of the Project.

The third and fourth structures defendants constructed within the Project boundary—both of which APCO contends violate the SMP—are a wood deck on the east side of the boat ramp and a portion of a wood sidewalk parallel to the shore on the west side of the boat ramp. APCO contends the wood deck does not conform to the SMP because it is not limited to providing access

to the docks, is not perpendicular to the shoreline,[4] and that the deck exceeds the twelve foot SMP limit for structures within the Project boundary. Simms Decl., ¶ 22. According to the SMP,

> 10. Structures located between the project boundary and the base elevation shall be limited to a structure that provides access to the dock. This includes a stairway, ramp or landing that connects the dock to the land. The maximum width of access structures shall be 12 feet.
>
> . . . .
>
> 17. Docks shall be constructed perpendicular to the shoreline.

SMP at 14–15. Based on the survey, the deck is evidently in violation of the 12-feet width and it also is not limited to providing access to a dock. Thus, it is a nonconforming structure under the SMP.

Likewise, as to the portion of the sidewalk parallel to the shore, paragraph 10 indicates that only structures providing access to land are permitted in that location. As is clear from the May 2010 survey, Dkt. 16 at Ex. B, the disputed portion of the sidewalk provides access from another sidewalk on land to gas tanks, but does not link land to a dock. Accordingly, that portion of the sidewalk is also a nonconforming structure under the SMP because it does not provide access to an existing dock.

The fifth structure APCO targets is a portion of the dock on the western side of the boat ramp. Specifically, defendants have extended—again without a permit—a previously 3.5 foot by 16 foot dock an additional 10 feet so that it is now 3.5 foot by 26.5 foot. Simms Decl., ¶ 21. According

---

[4] The court is unpersuaded by Mr. Simms' repeated averments that the wood deck and the wood sidewalk are both in violation of the SMP because they are not perpendicular to the shoreline to the greatest extent possible. See Simms Decl., ¶ 22. He does not cite to any portion of the SMP where this requirement appears and the court has been unable to find any part of the SMP adopted in 2005 that contains such a requirement for walkways, decks, or other structures. Rather, the provision cited herein above requiring perpendicular construction refers to "docks" only, and paragraph 7—which references structures—does not refer to their position relative to the shoreline. A more recent version of the SMP does include such a prohibition, but that version of the SMP does not control here. See Jan. 30, 2014 Updated SMP at 19, ¶ 11, available at http://www.smithmtn.com/ShorelineMgmt/Plan/UpdatedSMP03_05_14.pdf (last visited July 28, 2014) (specifically stating that, any structures providing access to the dock (such as a "walkway, stairway, or landing that connects the dock to land") and built between the project boundary and the base elevation of 795 fmsl "shall be constructed perpendicular to the base elevation to the greatest extent possible."). That same language does not appear in the SMP adopted in 2005.

to Mr. Simms' undisputed testimony, the SMP allows construction below the 795 fmsl contour elevation of small storage areas on the back of docks, but prohibits storage buildings such as the one put in place by defendants without a permit. Simms Decl., ¶ 23.[5]

II.

Although defendants have not filed a written response to the summary judgment motion, the court nonetheless must review and decide the motion. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 415-16 (4th Cir. 1993) (a party's failure to respond to a summary judgment motion might be grounds for granting judgment in the moving party's favor based on a failure to participate in the litigation and concepts of default, but to grant a motion pursuant to Rule 56, the court must review and decide it); see also Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required . . ., the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.") (emphasis added).

Rule 56 directs that summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236–37 (4th Cir.1995). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Nguyen, 44 F.3d at 237. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio

---

[5] Mr. Simms does not cite to any specific page or section of the SMP for this proposition, but the court presumes he refers to a provision limiting permittees to one enclosure per service dock with a maximum of 48 square feet (inside dimensions). SMP at 15.

Corp., 475 U.S. 574, 586–87 (1986). Notably, the non-moving party "may not rest upon mere allegations or denials." Wilkins v. Montgomery, 751 F.3d 214, 220 (4th Cir. 2014) (citation omitted). In this case, defendants have not identified specific material facts in dispute and thus the court concludes that the facts set forth in plaintiff's motion are undisputed.

Based on the undisputed facts as set forth in the preceding section, it is clear that defendants have failed to comply with the SMP and that the structures defendants built—without obtaining prior approval from APCO—are not in compliance with the SMP. It is likewise evident that APCO not only receives regulatory authority from FERC to regulate the Project's boundaries in compliance with the SMP, but also possesses a Flowage Right and Easement Deed entitling it to enforce the SMP with regard to the portion of defendants' property within the Project boundary. Indeed, as noted, APCO's easement deed expressly allows APCO to require or effect the removal of non-conforming structures like the ones at issue here. See supra at 2-4 (discussing APCO's authority and its Easement Deed). Defendants have not contested that their property is subject to APCO's Easement Deed and have offered no argument that the APCO's property rights are insufficient to entitle it to the relief it seeks. Thus, the court concludes that APCO has sufficient property rights with regard to defendants' property to obtain the relief it seeks. Accordingly, the Court will order the removal of the non-conforming structures.

As to APCO's allegations that defendants have added fill to alter the 800 fmsl contour line, the court notes that defendants have not provided any competent summary judgment evidence in opposition to the motion. At the hearing, they pointed out that they did not believe they should be held responsible for maintaining the 800 fmsl original contour line, and argued that the line has changed due to erosion, not from them filling in the land. They have not provided a single affidavit or other competent evidence to that effect, however. Even if their arguments at the hearing could be construed as sufficient to raise a dispute of fact as to this issue, moreover, the dispute is not material.

This is so because APCO only requests—and the court is only ordering—that any fill <u>placed by defendants</u> be removed.

Defendants also argued at the hearing that the relief requested by APCO will detrimentally affect their business. For example, Mr. Arthur pointed out that certain of the structures (as well as having land for parking) were vital to the success of the business or businesses at that location.

The court is not unsympathetic to defendants' business concerns. Nonetheless, the factual background of this case is undisputed and the legal ramifications of those undisputed facts are clear. In short, APCO has the right to the injunctive relief it seeks in its summary judgment motion. Defendants did not obtain APCO's permission before constructing structures and docks in violation of the SMP, and, despite requests from APCO, have refused to remove those structures or remedy any alterations they made to the 800-foot contour elevation. Because defendants have not presented a genuine issue of material fact precluding summary judgment, APCO's motion for summary judgment will be, and hereby is, **GRANTED**.

Accordingly, the Court will enter an appropriate order of injunctive relief as follows:

1) Defendants shall remove the 49.9 foot long "T"-shaped floating dock and wood piling;

2) Defendants shall remove the end of the "floating dock" (approximately 10.5 feet of that dock) on the western side of the boat ramp to make it even with the end of the stationary dock which is located on the opposite side of the boat ramp;

3) Defendants shall remove the decking around the storage building identified on the May 21, 2010 Mattern & Craig survey as "wood deck";

4) Defendants shall remove the portion of the wood sidewalk to the west of the boat ramp that is located parallel to the shoreline;

5) Defendants shall remove any fill that has been placed by defendants, or any structures that have been built or placed by defendants, below the original 800 fmsl contour as it is shown on the May 21, 2010 Mattern & Craig survey, except those shown on the permit defendants previously submitted for nonconforming structures;

6) Defendants shall restore the shoreline to its previous condition in the places where the decking, sidewalk, and structures referenced in paragraphs 1 through 5 are removed; and

7) Defendants shall make application to APCO for a permit which covers the remainder of the other docks.

The Court will require that all of these actions be completed not later than 90 days after entry of this judgment.

Additionally, the Court will order the defendants to pay APCO the $250 which was ordered by the court in 2010 to be paid as a sanction for failure to respond to APCO's discovery request. An appropriate order will be entered.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and to the pro se defendants.

Entered: August 11, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge